UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| GENESIS FS CARD SERVICES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> LENOVO (UNITED STATES) INC., <br><br> *Defendant.* | No. 1:22-CV-01385-MAK |

**LENOVO'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
TO GENESIS' COMPLAINT**

Defendant Lenovo (United States) Inc. ("Lenovo"), by and through its undersigned counsel, submits the following Answer, Affirmative Defenses, and Counterclaim ("Answer") in response to the complaint filed against it by Genesis FS Card Services, Inc. ("Genesis") on October 21, 2022 (D.I. 1) (the "Complaint").[1]

**ANSWER**

In responding to Genesis' allegations:

A.   With respect to allegations in the headings, subheadings, or any other unnumbered paragraph of or appendix to the Complaint, no response is required. To the extent that any response is required, Lenovo denies such allegations.

---

[1] Capitalized terms used but not defined herein are as defined in Lenovo's Motion to Dismiss the Complaint (ECF No. 24).

1

B.  All responses to allegations in a particular paragraph of the Complaint should be construed to apply equally to the allegations contained in footnotes or subsections, if any, accompanying or comprising such paragraph of the Complaint.

C.  To the extent any allegation is not specifically and expressly admitted, it is denied.

D.  Any statement that Lenovo is not required to respond to a particular paragraph shall be read to include, whether or not restated in the specific response, an additional statement that, to the extent a response is required, Lenovo denies each and every allegation in the paragraph.

E.  Lenovo reserves the right to amend this Answer.

## RESPONSES TO SPECIFIC ALLEGATIONS

1.  Lenovo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and on that basis denies those allegations, except admits that Genesis is an Oregon business corporation.

2.  Lenovo admits that it is a business corporation incorporated in Delaware with its principal place of business in Morrisville, North Carolina and that its registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.  Paragraph 3 of the Complaint states legal conclusions, and therefore does not require a response.  To the extent that a response is required, Lenovo does not contest subject matter jurisdiction or personal jurisdiction for the purposes of this action.

4.  Paragraph 4 of the Complaint states legal conclusions, and therefore does not require a response.  To the extent that a response is required, Lenovo does not contest that venue is proper for the purposes of this action.

5.      Lenovo denies the characterization of its business in paragraph 5 of the Complaint and asserts that it is a technology company that develops and manufactures a broad portfolio of personal computers, wireless devices, and smart devices.

6.      Lenovo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and on that basis denies those allegations.

7.      To the extent the allegations in paragraph 7 of the Complaint purport to characterize the contents of the parties' August 21, 2021, Program Participation Agreement (the "Agreement"), a written document that speaks for itself, Lenovo respectfully directs the Court to that document for its full and accurate contents. Lenovo otherwise denies the allegations in paragraph 7 of the Complaint, except admits that the parties entered into the Agreement on or about August 21, 2021.

8.      To the extent the allegations in paragraph 8 of the Complaint purport to characterize the contents of the Agreement, a written document that speaks for itself, Lenovo respectfully directs the Court to that document for its full and accurate contents. Lenovo otherwise denies the allegations in paragraph 8 of the Complaint, except admits that, pursuant to the Agreement, an applicant who was approved for an Account issued by Issuer and served by Genesis would become a "Cardholder" under the Agreement.

9.      The allegations in paragraph 9 of the Complaint purport to characterize the contents of the Agreement, a written document that speaks for itself, and Lenovo respectfully directs the Court to that document for its full and accurate contents. Lenovo otherwise denies the allegations in paragraph 9 of the Complaint.

10.     The allegations in paragraph 10 of the Complaint purport to characterize the contents of the Agreement, a written document that speaks for itself, and Lenovo respectfully

directs the Court to that document for its full and accurate contents.  Lenovo otherwise denies the allegations in paragraph 10 of the Complaint.

11.  The allegations in paragraph 11 of the Complaint purport to characterize the contents of the Agreement, a written document that speaks for itself, and Lenovo respectfully directs the Court to that document for its full and accurate contents.  Lenovo otherwise denies the allegations in paragraph 11 of the Complaint.

12.  Lenovo denies the allegations in paragraph 12 of the Complaint, except admits that the Genesis credit program was activated in September 2021.

13.  Lenovo lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint, and on that basis denies those allegations.

14.  Lenovo denies the allegations in paragraph 14 of the Complaint.

15.  Lenovo admits that Genesis notified Lenovo on June 10, 2022 that Genesis had set-off $490,641.78 in Lenovo funds.  Lenovo also admits that Genesis sent Lenovo an invoice for $2,623,445.41 in connection with purported Chargebacks under the Agreement.  Lenovo otherwise denies the allegations in paragraph 15 of the Complaint.

16.  Lenovo denies the allegations in paragraph 16 of the Complaint, except admits that Lenovo requested additional information from Genesis regarding the June Invoice and the purported Chargebacks upon which it was based.

17.  To the extent the allegations in paragraph 17 of the Complaint and its accompanying footnote state legal conclusions, they do not require a response.  Lenovo otherwise denies the allegations in paragraph 17.

18.  Lenovo incorporates its answers to the preceding paragraphs by reference as if fully set forth herein.

19. The allegations in paragraph 19 of the Complaint state legal conclusions, and therefore do not require a response.

20. The allegations in paragraph 20 of the Complaint state legal conclusions, and therefore do not require a response. To the extent a response is required, Lenovo denies the allegations in paragraph 20.

21. The allegations in paragraph 21 of the Complaint state legal conclusions, and therefore do not require a response. To the extent a response is required, Lenovo denies the allegations in paragraph 21.

22. The allegations in paragraph 22 of the Complaint state legal conclusions, and therefore do not require a response. To the extent a response is required, Lenovo denies the allegations in paragraph 22.

## ANSWER TO RELIEF REQUESTED

The remainder of the Complaint contains a plea for relief, to which no response is required. To the extent a response is deemed necessary, Lenovo respectfully requests that the Court enter judgment in its favor as described below.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any defense or issue that would otherwise rest on Genesis or as to any element of Genesis' claims, and reserving the right to amend this Answer to assert any additional defenses when, and if, in the course of its investigation, discovery, or preparation for trial, or otherwise, it becomes appropriate to assert such defenses, Lenovo hereby asserts the following affirmative defenses:

1. Genesis fails to state a claim upon which relief can be granted;

2. A defense to Genesis' claims is founded upon documentary evidence;

3. Genesis' recovery is barred by the clear terms of the Agreement;

  4.  Genesis' purported damages were not caused by Lenovo;

  5.  Genesis' own breaches of the Agreement are the cause of Genesis' purported damages.

  6.  Upon consideration of all the facts and circumstances, the relief requested should be denied as inequitable.

WHEREFORE, Lenovo prays for judgment dismissing with prejudice the claims against it, and respectfully requests that the Court award it costs and reasonable attorneys' fees and grant it such other and further relief as the Court may deem just and proper.

*******************

[THIS SPACE PURPOSEFULLY LEFT BLANK]

## COUNTERCLAIM COMPLAINT

Defendant / Counterclaim-Plaintiff Lenovo (United States), Inc. hereby asserts the following claims against Plaintiff / Counterclaim-Defendant Genesis FS Card Services, Inc., as follows:

## OVERVIEW

1. In August 2021, Lenovo, a leading technology company, entered into a Program Participation Agreement (the "Agreement") with Genesis, a financial services company focused on non-prime consumer loans, to provide credit accounts to certain qualified Lenovo customers seeking to purchase products through Lenovo's website.

2. Pursuant to the Agreement, Genesis would provide an alternative financing option to Lenovo customers who had been declined by a primary financing bank and, if approved during that "second look," Genesis would work with a bank (*i.e.*, the credit "Issuer") to provide retail financing to those customers.

3. The Agreement made clear that Genesis and the Issuer were to have full control over the specific individuals to whom credit was extended, and that Lenovo had no part in that decision.

4. In early September 2021, the Program was activated and placed in the financing waterfall for customers seeking to purchase Lenovo products on credit.[2]

5. During the short life of the Program, Genesis requested that the Program be temporarily removed from the credit waterfall on two separate occasions, once in September 2021

---

[2] Lenovo's waterfall credit program was managed by ChargeAfter Inc., a third-party consumer lending platform that Genesis interacted with directly in implementing the Program.

7

and again in December 2021, based on Genesis' stated concerns about the application of their own underwriting standards and the high levels of fraud indicators.

6. During the course of the program, Genesis began to request information from Lenovo about certain customer transactions. Lenovo promptly responded in good faith to each of these requests and Genesis never expressed concerns with either the timing or substance of Lenovo's responses.

7. Then, on June 10, 2022 – nearly nine months after the Program took effect – Genesis informed Lenovo that it had set off $490,641.78 in purported "credit losses" from amounts due to Lenovo under the Agreement and demanded payment of $2,623,445.41 from Lenovo for Chargebacks Genesis claimed were owed. Genesis did not provide any details on the Customers or underlying transactions at issue.

8. After Lenovo requested further information regarding the underlying transactions and the justification for each of the Chargeoffs, Genesis claimed that it was not possible to provide additional details because its team responsible for consumer "allegations relating to fraud and identity theft" had not captured that information.

9. On October 21, 2022, while the parties were attempting to reach a business resolution to the losses caused by Genesis' failure to properly implement its credit check as part of the Program, Genesis filed its Complaint, demanding payment of $2,623,445.41 in purported Chargebacks (on top of the $490,641.78 in Chargebacks already executed) to cover a total of 3,287 transactions that Genesis and its partner issuer had agreed to finance during a four-month period between November 8, 2021 and February 25, 2022.

10. Genesis' multiple failures in connection with the Program, including its failure to provide financing only to qualified Customers, to timely investigate or determine the cause of the

mass third-party fraud and identity theft it facilitated, and to adequately investigate and engage with Lenovo in connection with investigating each of the thousands of purported transactions subject to Chargebacks, have given rise to significant damages to Lenovo.

11. Accordingly, Lenovo files this counterclaim complaint against Genesis, asserting its right to reimbursement of the $490,641.78 in improperly set-off funds, plus all direct and indirect damages arising from Genesis' failure to conduct adequate credit checks in connection with the Program, including costs and expenses arising from this lawsuit.

## PARTIES

12. Defendant / Counterclaim-Plaintiff Lenovo (United States) Inc. ("Lenovo") is a corporation organized under the laws of the State of Delaware with its principal place of business at 8001 Development Drive, Morrisville, North Carolina 27560. Lenovo develops and manufactures a broad portfolio of personal computers, wireless devices, and smart devices.

13. Plaintiff / Counterclaim-Defendant Genesis FS Card Services, Inc. ("Genesis") is a corporation organized under the laws of the State of Oregon.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action for the reasons set forth in paragraphs 3 and 4 of Genesis' Complaint.

## FACTUAL ALLEGATIONS

A. **The Agreement**

15. On or about August 21, 2021, Lenovo and Genesis entered into a Program Participation Agreement (the "Agreement"). Pursuant to the Agreement, Genesis was to work with the Issuer to establish a second look financing program (the "Program") that would allow qualified Customers to finance authorized purchases made through the Lenovo website.

16. Customers who were approved for financing pursuant to the Program became "Cardholders" under the Agreement.

17. The Agreement required Genesis to review and evaluate applicants to the Program, in coordination with the Issuer, and determine those applicants to whom credit would be extended. Pursuant to the Agreement, Genesis would have "sole discretion" to determine whether applicants were eligible for financing under the Program. The Agreement provides, in relevant part:

> **Section 5.1. Credit Extension.** (A) Issuer or Genesis, as servicer for Issuer, may in its sole discretion and without the consent of Participant [*i.e.*, Lenovo], determine eligibility for an Account based on applicable underwriting and origination guidelines as established by Issuer, including without limitation, to (i) evaluate Applications; (ii) establish credit lines; (iii) increase or reduce credit lines; (iv) authorize and settle transactions; (v) terminate or suspend Accounts; (vi) establish risk tiers; and (v) establish acceptance rates or limits.

18. Under the Agreement, Genesis was required to issue credit only to "qualified Customers" making "authorized purchases." The Agreement provides, in relevant part:

> WHEREAS, Participant [*i.e.*, Lenovo] seeks to participate in, and Genesis seeks to enroll Participant in, a Program under which certain authorized purchases of Goods and Services will be financed through revolving Cardholder credit Accounts extended to qualified Customers by Issuer, which will be the first second look financing option following the primary source of financing (*i.e.*, the first second look financing immediately following a partial or total decline by the primary financing option).

19. In connection with the Program, Lenovo submitted a Participation Application to Genesis on or about August 20, 2021. This provides, in relevant part:

> This Participation Application [] is submitted to establish a program ("Program") by and between Genesis FS Card Services [] and Participant [*i.e.*, Lenovo] under which certain authorized purchases of Goods or Services from Customers of Participant will be financed through open-end, revolving Accounts issued to qualified Customers by the banking institution ("Issuer") that originates Accounts under the Program, which are serviced by Genesis.

20. The Agreement further provided that, in certain limited circumstances based on Lenovo's failure to comply with the terms of the Agreement or where Lenovo would not suffer

10

material loss, Genesis and the Issuer would be entitled to "Chargeback" the value of a Cardholder's purchase to Lenovo. The relevant section of the Agreement provides, in full:

> **Section 5.7  Chargeback Rights.**  Participant [*i.e.*, Lenovo] will not bear any credit losses associated with any Purchase or Card Sale, except as otherwise provided in this Agreement and except that Issuer or Genesis, as servicer for Issuer, may Chargeback to Participant the Purchase Amount if Genesis or Issuer determines that one or more of the following occurred:
>
> A.  Cardholder refuses to pay an amount due under the Account based on a Dispute about the quality of the Goods or Services purchased from, or any act or omission of Participant, including, without limitation, any alleged breach of warranty provided by or through Participant.
>
> B.  The Participant has materially breached this Agreement or the Operating Procedures, including, but not limited to, by failing to timely provide any documentation required under Section 6.3(C).
>
> C.  The Participant provides the Cardholder with an unapproved Disclosure.
>
> D.  The charge is disputed and Participant cannot provide a copy of the underlying Sales Slip within fifteen (15) days after Genesis requests such Sales Slip or the Sale Slip does not contain all information required pursuant to Section 3(G).
>
> E.  Genesis or Issuer determines that any Purchase or Card Sale does not represent a bona fide sale of Goods or Services, including without limitation arising from fraud or the actions of Participant's employees, agents or other third parties acting on behalf of or for the benefit of Participant.
>
> F.  The Goods or Services paid for using an Account have not been delivered or provided to Cardholder.
>
> G.  Genesis, at the direction of Issuer, must close an Account or reverse or refund a transaction pursuant to Section 6.3(C).
>
> H.  Goods or Services were delivered to or provided at an address other than the ship to address provided by Cardholder in the Sales Slip.
>
> I.  The Sales Slip is a duplicate of a previously paid Sales Slip, or the price of the Goods or Services shown on the Sales Slip differs from the amount shown on the Customer's or Cardholders' copy of the Sales Slip.
>
> J.  If Genesis determines, after reasonable investigation, that the Customer, Applicant or Cardholder has a valid Dispute with Participant and denies in good faith any of the following:  (i) the Card Sale, (ii) the execution of the Sales Slip or Application, (iii) the delivery, quality, or performance of the Goods or Services purchased, including, without limitation, breach of warranty, or (iv) she/he authorized the Card Sale, and Participant is unable to, or chooses not to, resolve such dispute or denial.
>
> K.  Participant fails to deliver to Genesis the Sales Slip within the times as specified by this Agreement.

11

    L.  The Cardholder refuses to accept delivery of the Goods or Services.

21.   The Agreement also set out a specific procedure for determining which transactions could be subject to Chargeback in the case of customer disputes:

> **Section 5.6. Borrower Disputes.** Genesis and Participant [*i.e..* Lenovo] will promptly notify the other when a Cardholder has made or asserted a Dispute. Within (10) business days of receipt of a Dispute, Participant will provide Genesis with all documentation describing the Dispute, including the Cardholder's written claim or, if taken verbally, a summary of the details of the claim. Participant agrees to cooperate in good faith with Genesis in the investigation and resolution of each Dispute and to comply with the Operating Procedures regarding Disputes. If the Dispute warrants a Chargeback pursuant to Section 5.7 or the Operating Procedures, Genesis may execute a Chargeback after receiving the documentation describing the Dispute from Participant or after receiving a description of the Dispute directly from the Cardholder. If Participant thereafter believes a Chargeback is not warranted, it shall have thirty (30) business days in which to investigate the Chargeback and provide Genesis with the documentation it believes may absolve it of the Chargeback. Genesis will determine in its sole discretion the sufficiency of such documentation and the validity of the Dispute. If Genesis determines that the documentation is sufficient to absolve Participant of the Chargeback, Genesis shall reverse the Chargeback and credit Participant with each applicable Chargeback.

22.   During the short life of the Program, Genesis requested that the Program be temporarily removed from the credit waterfall on two separate occasions.

23.   First, on or around September 17, 2021, Genesis requested that it be removed from the waterfall based on the need for Genesis to update its underwriting criteria and undertake "rigorous testing" in connection with its credit-check process.

24.   On or around September 27, 2021, Genesis was placed back in the financing waterfall, after confirming to Lenovo that "all [wa]s working as expected on our [*i.e.*, Genesis'] side."

25.   Shortly thereafter, Genesis began to request information from Lenovo about certain customer transactions. Lenovo promptly responded in good faith to each of Genesis' requests. Genesis never expressed any concerns about Lenovo's responses to its information requests; to the

contrary, Genesis affirmatively advised Lenovo that the information it had provided in response to these requests was sufficient.

26.     In November 2021, the Lenovo team inquired with Genesis about its comfort with the number and type of transactions it was approving, based on the disproportionate volume of transactions Genesis had recently approved compared to other lenders in the waterfall program. Genesis assured Lenovo that it had no concerns.

27.     Then, on or around December 8, 2021, Genesis requested an urgent call with Lenovo to discuss an "emergency situation with fraud." On the call, Genesis requested that it once again be suspended from participation in Lenovo's financing waterfall, until the Genesis team could take additional steps to remediate the fraud risk their underwriting criteria and approval process presented. At or around that same time, Genesis disclosed that approximately 30% of the recent accounts that it had approved for transactions on the Lenovo website using the Program were showing "high fraud indicators."

28.     On or around December 16, 2021, Genesis notified Lenovo that it had suffered a "tremendous amount of Identity Theft over the entire Black Friday period [*i.e.*, in late November]," and that Genesis was "continuing to work with ChargeAfter to figure out how to get the correct technology in place to eliminate this[.]" Based on its acknowledged failure to adequately identify fraudulent transactions as part of its credit check – a critical element of that work – Genesis did not request to be placed back into the financing waterfall until on or around March 16, 2022.

29.     Upon information and belief, once placed back in the financial waterfall, Genesis began to execute Chargebacks against Lenovo funds.

30.     On June 10, 2022 – just nine months after the initiation of the Program – Genesis informed Lenovo that it had set off $490,641.78 in purported "credit losses" from amounts due to

13

Lenovo under the Agreement. Genesis further demanded payment of $2,623,445.41 from Lenovo for Chargebacks Genesis claimed were owed under the Agreement. Genesis did not provide any details on the Customers or underlying transactions at issue in the June Invoice.

31. On June 29, 2022, Lenovo responded to the June Invoice with a request for a detailed breakdown of the underlying transactions.

32. On July 25, 2022, Genesis provided a spreadsheet reflecting certain details about the transactions purportedly subject to Chargeback. The spreadsheet was silent as to the basis for the purported Chargebacks.

33. In responding to Lenovo's request for further information regarding the transactions, Genesis stated that it was unable to provide the "precise contractual reason" for each Chargeback because its team responsible for consumer "allegations relating to fraud and identity theft" had not captured this information. Genesis further claimed that "it would be enormously burdensome to re-review all 2,646 transactions" due to the high volume of fraud claims.

34. On October 21, 2022 – during pending discussions between the parties about how to reach a business resolution of the dispute – Genesis filed its Complaint against Lenovo, demanding payment of the $2,623,445.41 in purported Chargebacks (on top of the $490,641.78 in Chargebacks already executed) to cover a total of 3,287 transactions that Genesis and its partner Issuer agreed to finance during a four-month period between November 8, 2021 and February 25, 2022.

35. Genesis' multiple failures in connection with the Program, including its failure to provide financing only to qualified Customers, to timely investigate or determine the cause of the mass third-party fraud it facilitated, and to adequately investigate and engage with Lenovo in

connection with investigating each of the thousands of purported transactions subject to Chargebacks, have given rise to significant damages to Lenovo.

## COUNT I – BREACH OF CONTRACT

36. Lenovo repeats and realleges the allegations in paragraphs 1 to 35 of its counterclaim, as if fully set forth herein.

37. As set forth above, Lenovo and Genesis are parties to the Agreement.

38. The Agreement is an enforceable contract between Lenovo and Genesis.

39. In breach of Genesis' principle obligation under the Agreement, Genesis failed to conduct an adequate credit check in approving customer transactions; instead, approximately half of all the transactions it approved appear to have involved third party fraud.

40. In further breach of certain material terms of the Agreement, including sections 5.7 and 5.8 of the Agreement, Genesis set-off $490,641.78 in improper Chargebacks, without communicating with Lenovo about the Chargebacks or providing specific details about the transactions at issue.

41. As a direct and proximate result of Genesis' breach of its obligations under the Agreement, Lenovo has incurred $490,641.78 in direct, out of pocket damages, plus additional costs and indirect damages to be determined at trial.

## COUNT II – GROSS NEGLIGENCE / RECKLESSNESS

42. Lenovo repeats and realleges the allegations in paragraphs 1 to 41 of its counterclaim, as if fully set forth herein.

43. Lenovo and Genesis entered into the Agreement for the purpose of providing an alternative financing option to Lenovo customers who had been declined by a primary financing bank. Pursuant to the Program, Genesis would conduct a credit review of these applicants, and if

it approved the applicant during this "second look," Genesis would work with a bank (*i.e.*, the credit "Issuer") to provide retail financing to those customers.

44. The Agreement made clear that Genesis and the Issuer were to have full control over the specific individuals to whom credit was extended, and that Lenovo had no part in that decision.

45. In breach of Genesis' principle obligation under the Agreement, Genesis failed to conduct an adequate credit check in approving customer transactions; instead, it now appears that approximately half of all the transactions it approved arose from third party fraud.

46. Even after Genesis became aware of issues with its credit check system in mid-September 2021, it nevertheless requested to be placed back in the financing waterfall after a short pause, without adequately addressing the root cause or putting the correct technology in place to identify potentially fraudulent transactions. This decision led to what Genesis later described as a "tremendous amount of Identity Theft over the entire Black Friday period" in November 2021.

47. In further breach of its duties, in dealing with the credit losses that resulted from thousands of fraudulent transactions, Genesis failed to ensure that it appropriately preserved information that would allow Lenovo to adequately address each of Genesis' subsequent purported Chargebacks, undermining Lenovo's ability to respond to the Chargeback requests.

48. In addition to the improper Chargebacks that Genesis is now asserting, Genesis' recklessness and gross negligence caused Lenovo to experience a significant burden in dealing with information requests from Genesis in connection with a large number of fraudulent transactions. It also left Lenovo without the additional "second look" financing tier it had expected to have available for significant periods during the short life of the Program.

49.     As a direct and proximate result of Genesis' gross negligence, Lenovo has incurred at least $490,641.78 in direct, out of pocket damages, plus additional costs and indirect damages to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Defendant / Counterclaim-Plaintiff Lenovo prays for relief and judgment as follows:

A.      An award of damages against Genesis, in an amount to be determined at trial, but not less than $490,641.78;

B.      Interest, costs, and attorneys' fees; and

C.      Such other relief as the Court may deem just and proper.

DATED: February 17, 2023
Wilmington, Delaware

**DLA PIPER LLP (US)**

By:  /s/ Michelle L. Morgan
Michelle L. Morgan (ID No. 3651)
Kelly L. Freund (ID No. 6280)
1201 North Market Street
Wilmington, DE 19801
Telephone: (302) 468-5700
Fax: (302) 394-2341
michelle.morgan@us.dlapiper.com
kelly.freund@us.dlapiper.com

Melissa J. Godwin (*pro hac vice pending*)
1251 Avenue of the Americas
New York, NY 10020
Tel: 212-335-4500
melissa.godwin@us.dlapiper.com

*Counsel for Defendant
Lenovo (United States) Inc.*