**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **GENESIS FS CARD SERVICES, INC.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| v. | : | NO. 22-1385-MAK |
| | : | |
| **LENOVO (UNITED STATES), INC.** | : | |

## MEMORANDUM

**KEARNEY, J.**  **March 17, 2023**

A technology company seeking to sell more products agreed to work with a sub-prime lending company to review and independently finance credit for consumers who could not otherwise buy the technology products. The two companies defined their obligations in a detailed agreement. They agreed the sub-prime lender would exclusively review the credit. It would then extend the credit to a qualified consumer and pay the borrowed funds over to the technology company expecting the qualified consumer would repay the credit as agreed. The technology company and sub-prime lender agreed the technology company would be responsible for losses on most credit defaults but would not be responsible for defaults on credit induced by third-party fraud. The sub-prime lending company discovered third-party fraud after a few months. It offset its defaulted loans from funds it owed to the technology company on new sales and later sued the technology company to recover funds earlier turned over from the allegedly fraudulent financings. The technology company counterclaims the sub-prime lender both breached their agreement and is liable in gross negligence in reviewing the credits. The sub-prime lender now moves to dismiss the negligence claim as impermissibly duplicative of the contract claim.

We agree with the sub-prime lender. The technology company has not pleaded a basis to proceed on both a contract and negligence claim.

**I.      Alleged facts relating to the Lenovo's gross negligence counterclaim.**

Technology company Lenovo (United States), Inc. sought to secure credit for end consumers who could not otherwise afford to buy its products. It contracted with financial services company Genesis which focused on sub-prime lending to provide credit to consumers hoping to buy Lenovo technology products who could not otherwise qualify for credit.[1] Genesis in turn worked with a bank to fund this alternative financing options.[2] Genesis and its issuing bank worked together to assess the credit profile of these customers for their sub-prime lending and, if approved, Genesis approved and managed the credit to purchase Lenovo products through a "Lenovo Credit Card."[3]

Genesis and the bank funding the Lenovo Credit Card decided which applicants to approve and the amount of the line of credit.[4] Lenovo did not participate in credit approvals.[5] Genesis had the obligation to extend a line of credit to qualified customers.[6] An approved consumer became a cardholder.[7] The cardholder could then purchase products from Lenovo's website using the line of credit on the card.[8] Genesis then paid Lenovo the amount of borrowed funds to Lenovo.[9] The cardholder in turn paid back the line of credit back to Genesis.[10]

### *Lenovo agreed with Genesis to divide credit losses.*

The parties agreed Lenovo would not bear credit losses associated with the cardholder sales except in twelve specific circumstances.[11] For example, Lenovo would bear the credit loss if a cardholder refused to pay an amount due because of a dispute about the quality of the Lenovo product or an alleged breach of warranty for the Lenovo product.[12] Another provision at issue here permitted a chargeback if Genesis or the issuing bank determined a card sale did not represent a "bona fide" sale, including a sale arising from the fraud or actions of Lenovo employees, agents "or other third parties acting on behalf of or for the benefit of" Lenovo.[13]

If Genesis or the issuer bank found one of these specific circumstances, the parties agreed Genesis could "chargeback" Lenovo.[14] Lenovo and Genesis agreed to a procedure to determine the transactions subject to chargeback.[15] The procedure included notification, production of documentation describing the dispute, and a thirty-day period to investigate and dispute the chargeback, but Genesis had the sole discretion to determine the validity of the chargeback.[16]

*Genesis finds third-party fraud and withdraws from further financings.*

Genesis asked Lenovo to exclude it from the financing system on September 17, 2021 to test its credit-check process.[17] Genesis reentered the financing system and confirmed the credit-check system "was working as expected" ten days later.[18] In November 2021, Lenovo became concerned with the disproportionate volume of transactions approved by Genesis compared to other lenders and requested Genesis's assurances regarding its credit approvals.[19] Genesis confirmed it had no concern with its credit approvals.

But Genesis changed its perspective by December 8, 2021 when it requested an "urgent call" with Lenovo to discuss an "urgent situation with fraud."[20] Genesis then asked Lenovo to exclude it from the financing system until Genesis could take additional steps to fix its fraud risk.[21] Genesis disclosed approximately thirty percent of its recently approved accounts for purchases on the Lenovo website showed "high fraud indicators."[22]

Genesis notified Lenovo within a week to ten days of suffering "a tremendous amount of identity theft" over the Black Friday shopping period causing credit losses from approved applications.[23] Genesis asked to remain out of the financing system until mid-March 2022.[24]

Lenovo does not plead what happened next until June 10, 2022 when Genesis told Lenovo it offset $490,641.78 in credit losses from the amounts it owed Lenovo and demanded payment of $2,623,445.41 in chargebacks Genesis claimed owed under the Agreement.[25] Through the summer

3

of 2022, Genesis and Lenovo exchanged information and other data regarding the transactions included in the chargebacks to resolve their dispute.[26]

### *Genesis sued Lenovo and Lenovo asserted counterclaims.*

Genesis sued Lenovo in October 2022 alleging Lenovo breached the Agreement by refusing to pay $2,623,445.41 in chargebacks over and above the $490,641.68 in offsets already taken against amounts it owed to Lenovo.[27] Genesis alleged certain credit losses are the responsibility of Lenovo where Genesis, in its sole discretion, had the right to determine whether a chargeback for the credit loss is warranted.

Lenovo moved to dismiss Genesis's complaint. We denied the motion and ordered Lenovo to answer the complaint.[28] Lenovo answered and counterclaimed on February 17, 2023.[29] Lenovo asserted counterclaims for breach of contract and gross negligence/recklessness. It claims it incurred at least $490,641.78 in damages caused by the negligence of Genesis to conduct an adequate credit check in approving customer transactions and, even after becoming aware of issues with its credit check system, continued to approve credit transactions through November 2021.

## II.  Analysis

Genesis now moves to dismiss Lenovo's gross negligence claim as barred by the economic loss doctrine under Delaware law.[30] Genesis argues its relationship with Lenovo is based on the parties' detailed Agreement, any duty owed by Genesis to Lenovo arises only out of the Agreement, and Lenovo's tort-based claim seeks the same economic damages as the breach of contract claim. Genesis contends we must dismiss Lenovo's gross negligence claim as a matter of law.

Lenovo responds the economic loss doctrine does not apply, asserting Genesis's duty in tort is independent of the contract and the tort damages are different than the alleged contract damages.[31] Lenovo also argues even if the economic loss doctrine applies, an exception found in

Section 552 of the Restatement (Second) of Torts allows its tort claim to survive.[32]

We agree with Genesis and dismiss Lenovo's gross negligence claim without prejudice under the economic loss doctrine based on Lenovo's sworn allegations. The economic loss doctrine precludes a recovery in tort for losses solely economic in nature.[33] Tort recovery is allowed "only if losses are accompanied by bodily harm or property damages and not for losses that are solely economic in nature."[34] The judicially created economic loss doctrine "arises from the distinct functions served by tort law and contract law."[35] "Liability imposed by tort law protects an individual and their property from risk of physical harm, while liability imposed by contract protects a different interest: the 'bargained for expectations' of both contracting parties."[36] The economic loss doctrine "is especially suited to cases where privity of contract" exists.[37]

The doctrine does not bar a tort claim if the claimed duty is independent from the duties imposed by the contract.[38] Lenovo must then allege Genesis breached a duty independent of the duties imposed by the Agreement.[39] Lenovo argues the economic loss doctrine does not apply to its negligence claim for two reasons: (1) it seeks damages distinct from, and not duplicative of, its breach of contract claim asserted against Genesis; and, (2) Genesis's duty to Lenovo arises independent of the parties' contract and is based on Genesis's role as Lenovo's professional advisor in the financial services/credit sector.[40] Lenovo also argues even if the economic loss doctrine applies, Lenovo's negligence claim falls under a permissible exception to the doctrine under Section 552 of the Restatement (Second) of Torts.

**A. Genesis has no duty to Lenovo independent of the contract.**

Lenovo alleges Genesis had a duty arising independent of the Agreement; Genesis served as Lenovo's "professional advisor" responsible for reviewing and evaluating consumers to determine who should be extended credit to purchase Lenovo products.[41] Lenovo argues its claims

5

are based on Genesis's "professional negligence" in making credit determinations and are not barred by the doctrine.

We cannot find authority to support Lenovo's argument and the one case it cites—*International Fidelity Insurance Company v. Mattes Electric, Inc.*—goes against it.[42] In *International Fidelity*, the plaintiff surety company issued performance bonds for electrical work to be performed by another defendant, Mattes Electric, in a construction project. The electrician did not perform the work, leaving the surety company obligated under the bonds it issued. The surety company sued several defendants, including the contract manager for the construction project asserting the contract manager negligently performed its duties to manage the project. The surety company and the contract manager did not have a contractual relationship and the surety company asserted liability based on negligence.[43] The defendant contract manager moved to dismiss the negligence claim against it as barred by the economic loss doctrine. The surety company responded the doctrine is not applicable to the facts of the case and the exceptions for negligent misrepresentation or professional malpractice applied.[44]

Judge Carpenter of the Delaware Superior Court disagreed with the surety company, finding the economic loss doctrine applied to bar its negligence claim. Judge Carpenter reasoned the surety company's damages are solely economic in nature and barred by the doctrine even where no contract existed between the parties.[45] Judge Carpenter explained if the surety company is obligated under the bonds to pay money for the electrician's failure to perform work, the only damages are monetary in nature and "fit the definition of economic loss."[46] Judge Carpenter concluded unless the contract manager's conduct fell within an exception, the economic loss doctrine prevents the surety's tort claim.

Judge Carpenter then examined whether the claimed exceptions—negligent misrepresentation and professional malpractice—applied.[47] He concluded neither exception applied because the surety company failed to allege the elements of negligent misrepresentation and because no professional relationship existed between the parties. Judge Carpenter recognized the Delaware Supreme Court in *Danforth v. Acorn Structures, Inc.* noted in a footnote it did not address whether the economic loss doctrine would bar recovery when a claim relates to professional malpractice.[48] Judge Carpenter declined to apply the Supreme Court's deferral in *Danforth* to recognize the professional malpractice exception, finding the Supreme Court "unfortunately" did not explain "what was intended by the statement."[49] To the extent Lenovo relies on *Danforth* as it suggests in a footnote, we reject it.[50]

Judge Carpenter did find, however, "at a minimum some duty by the defendant to the plaintiff" but the obligation and duty "must be one generally recognized by the profession as traditionally owed the client or the group of persons the client intended to benefit."[51] Judge Carpenter found no professional relationship or duty between the parties and rejected the notion "the economic loss doctrine can be overcome by a general claim of malpractice when no relationship between the parties exists."[52]

We do not find *International Fidelity* helpful to Lenovo's position. First, as Judge Carpenter found, Lenovo's claimed damages are purely monetary in nature and are barred by the economic loss doctrine. Second, we find no exception applies here. We cannot find a pleaded obligation and duty of Genesis to Lenovo "recognized by the profession as traditionally owed to the client or the group of persons the client intended to benefit." Lenovo identifies Genesis's breach of its "principle [sic] obligation under the Agreement" by failing to conduct adequate credit checks in approving customer transactions; a duty which by its own pleading arises from the parties'

7

Agreement.

Our search for authority shows cases at the motion to dismiss stage allowing tortious interference with contractual relations and fraud claims to go forward as exceptions to the economic loss doctrine. For example, in *R. Keating & Sons, Inc. v. Chiselcreek Development, LLC*, Judge Medinilla denied a motion to dismiss claims brought by homeowners against their contractor for abandoning their building project[53] Judge Medinilla found a claim of fraudulent inducement to enter into a contract independent of the duties imposed by the contract and an allegation by the homeowners the contractor tortiously interfered with the homeowners' contract with subcontractors is independent of the duties under the homeowners' contract with the contractor.[54] But the facts here are not similar to those reviewed by Judge Medinilla in the *Keating* case. Lenovo does not plead a duty or cause of action arising outside of the contract. The economic loss doctrine applies as a bar to Lenovo's negligence claim.

### B. The section 552 exception does not apply to the sworn facts.

Lenovo alternatively argues Section 552 of the Restatement (Second) of Torts provides an exception:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[55]

Subsection 552(2) provides an exception to subsection 552(1): [T]he liability stated in Subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction."[56]

8

Delaware adopted section 552 as an exception to the economic loss doctrine.[57] To state a claim under section 552, Lenovo must allege: (1) Genesis supplied information to Lenovo for use in business transactions with third parties; and (2) Genesis is in the business of supplying information.[58] Lenovo failed to allege either element.

Lenovo does not allege Genesis supplied "false information" to it for use in business transactions with third parties. And Lenovo did not allege Genesis is in the "business" of supplying information. Lenovo instead swears Genesis is a "financial services company focused on non-prime consumer loans" providing "alternative financing options" to Lenovo customers denied credit by banks, a decision Lenovo "had no part in …."[59] It is unclear —because Lenovo fails to plead it—the false information Genesis supplied to Lenovo for Lenovo's use in transactions with third parties if Genesis had the sole decision-making authority on credit approvals. Lenovo instead swears Genesis and its issuing bank alone made the decisions to enter into the business transactions with third parties.

Lenovo argues the provision of information by Genesis to Lenovo was the "end and aim" of Genesis's work to conduct a "second look" at credit applications, providing Lenovo information about applicants' creditworthiness, and deciding whether to extend credit to applicants all leading to Lenovo "permit[ting] the applicant to make a purchase from the Lenovo website." But the case law does not support Lenovo's argument.

To determine whether a sub-prime lending company such as Genesis is in the business of supplying information, courts "must conduct a case-specific inquiry, looking to the nature of the information and its relationship to the kind of business conducted."[60] A defendant is "in the business" of supplying information where "information is the end and aim product of a defendant's work."[61] But, where the "information supplied is merely ancillary to the sale of a product or service

9

… defendant will not be found to be in the business of supplying information."[62] For example, in *Kuhn Construction,* Chief Judge Robinson found information provided by the defendant hired to supply plans and drawings in connection with a construction projection is "incidental to the sale of a finished, tangible product" and not "in the business of" supplying information for the section 552 exception to the economic loss doctrine.[63] Judge Robinson explained in the decades since the Delaware Supreme Court adopted the section 552 exception to the economic loss doctrine, Delaware courts "have clarified, refined and narrowed the scope of the exception."[64]

In *CB Lewes, LLC v. Brightfields, Inc.*, Judge Stokes dismissed a negligence claim finding section 552 of the Restatement did not apply as an exception to the economic loss doctrine.[65] There, the plaintiffs contracted with defendant service company providing consulting, valuation, investigation, and remediation services focusing on clean up and redevelopment of contaminated properties. The defendant prepared a description of the proposed excavation areas to determine the amount of debris to be remediated. Plaintiffs alleged deficiencies in the report causing them additional costs for remediation and sued the defendant in tort and contract. The defendant moved to dismiss the negligence claims based on the economic loss doctrine.[66] The plaintiffs argued section 552 of the Restatement applied as an exception to the economic loss doctrine.

Judge Stokes disagreed and found at the motion to dismiss stage plaintiffs contracted with the defendant to investigate and test a development site and submit reports and consult on remediation needs before development. Analogizing to other cases, Judge Stokes concluded defendant's services were not that of "information suppliers" and information supplied by the defendant is incidental to its services.[67] We see no difference between the type of services provided by Genesis here and the services provided by the defendant in *CB Lewes*.

10

We are mindful Judge Sleet recognized the determination as to whether a defendant falls within the section 552 exception to the economic loss doctrine are typically made at the summary judgment stage "particularly when ambiguous pleadings as to a defendant's role must be resolved through discovery."[68] But where the pleading "clearly establishes" the defendant is not in the business of supplying information," further discovery is not necessary and the court may make the decision at the motion to dismiss stage.[69]

Lenovo does not plausibly allege Genesis is in the business of supplying information and supplied false information; Lenovo instead swears Genesis is a financial services company who contracted with Lenovo to provide credit screening and extensions of credit. Lenovo's swore allegations confirm whatever information Genesis provided to Lenovo is incidental to its financial services. Section 552 does not apply as an exception—and a narrowly applied one at that under Delaware law—to the economic loss doctrine in this case. We dismiss the negligence/recklessness counterclaim without prejudice to discovery confirming facts contrary to Lenovo's sworn allegations now before us.

### III. Conclusion

The economic loss doctrine prohibits Lenovo from dressing its contract claim as a tort claim. Lenovo seeks the same damages in its gross negligence/recklessness claim as its contract claim with no independent tort harm or duty. We dismiss Lenovo's gross negligence/recklessness counterclaim without prejudice.

---

[1] D.I. 35, Counterclaim ¶¶ 1–2. The parties entered into a Program Participation Agreement.

[2] *Id.* ¶ 2.

[3] *Id.*; D.I. 1 ¶ 7.

---

[4] D.I. 35, Counterclaim ¶ 3.

[5] D.I. 35, Counterclaim ¶ 17. The Agreement provides in relevant part:

> **Section 5.1 Credit Extension. A.** Issuer or Genesis, as servicer for Issuer, may, in its sole discretion and without the consent of Participant, determine eligibility for an Account based on applicable underwriting and origination guidelines as established by Issuer, including without limitation, to (i) evaluate Applications; (ii) establish credit lines; (iii) increase or reduce credit lines; (iv) authorize and settle transactions; (v) terminate or suspend Accounts; (vi) establish risk tiers; and (v) establish acceptance rates or limits.
>
> *Id.*

[6] *Id.* ¶ 18.

[7] *Id.* ¶¶ 17–19; D.I. 1 ¶ 8.

[8] *Id.*

[9] *See id.*

[10] *See id.*

[11] D.I. 35, Counterclaim ¶ 20.

[12] *Id.*, Agreement Section 5.7 A.

[13] *Id.*, Agreement Section 5.7 E.

[14] The Agreement defines "chargeback" as "the reimbursement to Issuer (bank) via Genesis by [Lenovo] of the portion of a Sales Slip disputed by a Cardholder." D.I. 17–1 at 9. This system requires Lenovo to bear the loss from certain situations as detailed in Section 5.7 of the Agreement.

[15] ECF Doc. No. 35, Counterclaim ¶ 21.

[16] *Id.* "Genesis will determine in its sole discretion the sufficiency of such documentation and the validity of the Dispute." *Id.*

[17] *Id.* ¶ 23.

[18] *Id.* ¶ 24.

[19] *Id.* ¶ 26.

---

[20] *Id.* ¶ 27.

[21] *Id.*

[22] *Id.*

[23] *Id.* ¶ 28.

[24] *Id.*

[25] *Id.* ¶ 30.

[26] *Id.* ¶¶ 31–33.

[27] *Id.* ¶ 34.

[28] D.I. 31.

[29] D.I. 35.

[30] D.I. 39. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, we "must accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiffs." *Yogi Krupa, Inc. v. GLeS, Inc.*, 2022 WL 16834164, at *3 (D. Del. Nov. 9, 2022). We must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our

13

---

Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[31] D.I. 44 at 4-6.

[32] *Id.* at 6-8.

[33] *Automated Precisions, Inc. v. Pare*, --- F. Supp. 3d ---, 2022 WL 4482719, at *11 (D. Del. Sept. 27, 2022) (quoting *J.D. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 459 (D. Del. 2013)).

[34] *Id.*

[35] *Marydale Preservation Assocs., LLC v. Leon N. Weiner & Assocs., Inc.*, 2022 WL 4446275, at *13 (Del. Super. Ct. Sept. 23, 2022) (quoting *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992)).

[36] *Id.* (quoting *Danforth*, 608 A.2d at 1196).

[37] *Id.* (quoting *Danforth*, 608 A.2d at 1200).

[38] *Automated Precisions, Inc.*, 2022 WL 4482719 at *11 (quoting *Aureus Holdings, LLC v. Kubient, Inc.*, 2021 WL 3465050, at *7 (Del. Super. Ct. Aug. 6, 2021)).

[39] *Gea Sys. N. Am. LLC v. Golden State Foods Corp.*, 2020 WL 3047207, at *7 (Del. Super. Ct. June 8, 2020).

[40] D.I. 44.

[41] D.I. 35 ¶¶ 44–45; D.I. 44 at 5.

[42] 2002 WL 1400217 (Del. Super. Ct. June 27, 2002).

[43] *Id.* at *1.

[44] *Id.*

---

[45] *Id.*

[46] *Id.*

[47] *Id.* at *2.

[48] *Id.* (citing *Danforth*, 608 A.2d at 1195).

[49] *Id.*

[50] *See* D.I. 44 at 6, n. 8.

[51] *Int'l Fidelity Ins. Co.*, 2002 WL 1400217 at *2. Judge Carpenter relied on an Illinois Supreme Court decision imposing a duty. Lenovo does not provide Delaware law imposing a duty under the allegations before us.

[52] *Id.*

[53] 2020 WL 6390676 (Del. Super. Ct. Oct. 30, 2020).

[54] *Id.* at *6.

[55] Restatement (Second) of Torts, § 552(1) (1977).

[56] *Id.* § 552(2).

[57] *Handler Corp. v. West Am. Ins. Co.*, 2022 WL 175769, at *3 (Del. Super. Ct. Jan. 19, 2022) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc*., 583 A.2d 1378, 1383–86 (Del. 1990)); *see also Delaware State Univ. v. Thomas Co., Inc.*, 2020 WL 6799605, at *37–38 (D. Del. Nov. 19, 2020) (recognizing under Delaware law section 552 of the Restatement as an exception to the economic loss doctrine).

[58] *Delaware State Univ.*, 2020 WL 6799605 at * 38 (quoting *Delaware Art Museum v. Ann Beha Architects,* 2007 WL 2601472, *2 (D. Del. Sept. 11, 2007)).

[59] D.I. 35 ¶¶ 1–3.

[60] *Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc*., 844 F. Supp. 2d 519, 527 (D. Del. 2012) (quoting *RLI Ins. Co. v. Indian River Sch. Dist*., 556 F. Supp. 2d 356, 361–62 (D. Del. 2008)).

[61] *Id.* (quoting *Delaware Art Museum*, 2007 WL 2601472, at *2).

[62] *Id.* (quoting *RLI Ins. Co.*, 556 F. Supp. 2d at 362).

15

[63] *Id.*, 844 F. Supp. 3d at 528–29.

[64] *Id.* at 529.

[65] 2020 WL 6364521 (Del. Super. Ct. Oct. 29, 2020).

[66] *Id.* at *1–*2.

[67] *Id.* at *3–*4.

[68] *Delaware Art Museum*, 2007 WL 2601472 at *4 (citing *RLI Ins. Co. v. Indian River Sch. Dist.*, 2006 WL 1749069, at *3 (D. Del. June 20, 2006)).

[69] *Id.*